**Norman J. BOLES and Margaret Gonzales, and all others similarly situated**

v.

**Joseph CALIFANO.**

**Civ. A. No. A–77–CA–104.**

United States District Court,
W. D. Texas,
Austin Division.

June 23, 1978.

Probable Jurisdiction Noted Jan. 22, 1979.
See 99 S.Ct. 1042.

Herbert Semmel, Washington, D.C., Regina Lynn Rogoff, Austin, Tex., for plaintiffs.

Barbara Allen Babcock, Asst. Atty. Gen., David J. Anderson, Dennis G. Linder, Mark F. Evens, Attys., Dept. of Justice, Washington, D.C., Jamie C. Boyd, U. S. Atty., Western Dist. of Tex., John E. Murphy, Asst. U. S. Atty., San Antonio, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

This action has been brought by the plaintiffs, Margaret Gonzales and her son, Norman J. Boles, who seek Mother's Insurance Benefits pursuant to section 202(g) of the Social Security Act, 42 U.S.C. § 402(g). The plaintiff Gonzales is not the widow of the deceased wage earner, who died a fully insured individual for purposes of collecting old-age insurance benefits. The plaintiff son is the illegitimate child of the wage earner and he is presently receiving Child's Insurance Benefits under 42 U.S.C. § 402(d) on the account of his father. Plaintiffs challenge the constitutionality of Section 202(g)(1) of the Act, as amended, 42 U.S.C. § 402(g)(1), which precludes entitlement to benefits to the mother of a child of a fully insured wage earner who never married that wage earner. Plaintiffs claim that the purpose behind the enactment of 42 U.S.C.

§ 402(g)(1) was the protection and care of minor children, and that by paying benefits to a mother with minor children in her care, the resulting benefit would in fact inure to the minor child. Therefore, if the mothers of illegitimate children are not permitted to obtain mother's insurance benefits, the result is not only a loss for them but a loss of benefits to illegitimate children solely because of their illegitimacy. Defendant, on the other hand, argues that the benefit is for the mother, and that the plaintiff child was not denied this benefit because of his illegitimate birth, but because his mother failed to qualify for such entitlement under valid statutory criteria. This Court believes Plaintiffs' characterization of the case is the more apt one and aligns itself with that line of cases which has overturned enactments which unfairly discriminate against children solely on the basis of their illegitimacy.

## I. Statement of Facts

The determinative facts in this case are not in dispute; most of them appear in the administrative record filed as part of this case. The plaintiff, Margaret Gonzales, and the deceased wage earner, Norman W. Boles, though never married, lived together in Georgetown, Texas, continuously from February 1963 until sometime in 1966. As a result of this relationship, Norman J. Boles, the plaintiff, was born on October 29, 1964.

Norman W. Boles returned to Wilson County, Tennessee and married Nancy L. Boles in April 1967. The two lived together until the wage earner's death on October 10, 1971. During their marriage they had two sons, Johnny W. Boles, born on January 12, 1969, and Jessie R. Boles, born March 8, 1970. Nancy L. Boles applied for and was found entitled to, on her own behalf and on behalf of her two sons, mother's insurance benefits and children's insurance benefits under the account of Norman W. Boles. She and her sons began receiving those benefits in December 1971, effective from September 1971.

On January 15, 1973, Margaret Gonzales made application on her own behalf and on behalf of Norman J. Boles for mother's insurance benefits and child's insurance benefits under the account of Norman W. Boles. Both applications were denied initially on April 13, 1973. On January 24, 1974, Margaret Gonzales' application was denied following a reconsideration determination. However, subsequent to a reconsideration determination, the application for child's insurance benefits on behalf of Norman J. Boles, who had been acknowledged in writing by the wage earner, had been approved. In April 1974, the monthly benefits payable to Nancy L., Johnny W., and Jessie R. Boles were reduced, effective from January 1973, to compensate for the addition of Norman J. Boles to the account of Norman W. Boles. This reduction was required to keep the account within the family maximum as allowed under section 215 of the Social Security Act, 42 U.S.C. § 415. On November 15, 1974, an administrative law judge of the Bureau of Hearings and Appeals affirmed the decision denying mother's insurance benefits to Ms. Gonzales on the basis that she and the deceased wage earner had never been married. Review of that decision by the Appeals Council of the Bureau of Hearings and Appeals was requested by Ms. Gonzales on November 19, 1974.

On November 27, 1974, Plaintiffs filed an action in the United States District Court for the District of Columbia in which they sought convocation of a three-judge district court pursuant to the then current version of 28 U.S.C. § 2282. That Court, on September 15, 1975, ordered a change of venue to the United States District Court for the Western District of Texas. In Texas, Judge John R. Brown, on November 10, 1975, issued an order designating a three-judge court. The three-judge court action has been pending on the docket of this court as Civil Action No. A–75–CA–171. On April 13, 1977, the Appeals Council of the Bureau of Hearings and Appeals denied Plaintiffs' claim. On June 10, 1977, Plaintiffs filed the instant action, apparently fearing that there might be a jurisdictional defect in the three-judge court action. Cross-motions for summary judgment have been filed in the case.

## II. Preface to Legal Argument

The program of Social Security benefits for children of deceased wage earners includes Children's Insurance Benefits and Mother's Insurance Benefits. As the Court examines in more detail later, Mother's Insurance Benefits were intended as a benefit to the child. The Supreme Court expressly so held in *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), stating for example, that "§ 402(g) was intended only to provide an opportunity for children to receive the personal attention of one parent, since mother's benefits are linked to children's benefits only so long as it is realistic to think that the children might need the parent at home." 420 U.S. at 650, n. 17, 95 S.Ct. at 1234. The legislative history also establishes that the purpose is to benefit the child. *See infra.*

In a line of twelve cases since 1968, the Supreme Court has repeatedly declared unconstitutional discrimination against illegitimate children and their mothers, particularly in cases involving social welfare benefits. The most recent case is *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), prohibiting discrimination against illegitimate children under intestate inheritance laws. The *Trimble* decision lists the eleven earlier cases. *See* 430 U.S. at 766, n. 11, 97 S.Ct. 1459.

Ten of the cases overturned discrimination against illegitimates. Only two of the twelve cases upheld any form of disparate treatment of illegitimate children. Those two cases were *Labine v. Vincent,* 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971) and *Mathews v. Lucas,* 427 U.S. 495, 97 S.Ct. 2755, 49 L.Ed.2d 651 (1976). *Labine* has been in essence overruled, or at least limited to its facts, by *Trimble v. Gordon. See* 430 U.S. at 767–68, n. 12 and 776, n. 17, 97 S.Ct. 1459. *Mathews* has for all practical purposes been rendered moot by *Trimble. See infra.*

Four of the twelve cases expressly held unconstitutional discrimination against illegitimates in Social Security benefits. *See infra.* They require, in the Court's view, a similar holding here, where all ille-

gitimate children are denied the benefits of Mother's Insurance Benefits while all legitimate children receive them, without regard in either case to whether the deceased father had even lived with or supported the children.

## III. Mother's Insurance Benefits Are Intended as Benefits to the Child

[2] The statute challenged herein, 42 U.S.C. § 402(g)(1), provides Mother's Insurance Benefits to allow the surviving child of a deceased worker to receive the care of its surviving parent, relieving at least to some extent the necessity of the surviving parent to leave the child and go to work. *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975). The three principal eligibility requirements for Mother's Insurance Benefits, so far as this case is concerned, are:

1) that the child be eligible for or receiving Children's Insurance Benefits;

2) that the child be in the care of its mother; and

3) that the mother of the child had been married to the deceased father, either at the time of his death or by an earlier marriage followed by a divorce.

The first two requirements have been met herein. Plaintiff Norman Boles is receiving Children's Insurance Benefits and is in the care of his mother, Plaintiff Gonzales. The third requirement, marriage of the mother to the father, deprives plaintiff Boles and all other illegitimate children of the benefits of Mother's Insurance Benefits.

In *Weinberger v. Wiesenfeld,* 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975), the Supreme Court unanimously held that Mother's Insurance Benefits are for the benefit of the child. The Court stated at 420 U.S. at 648–49, 95 S.Ct. at 1233:

". . . § 402(g), linked as it is directly to responsibility for minor children, was intended to permit women to elect not to work and to devote themselves to the care of children. . . .

"That the purpose behind § 402(g) is to provide children deprived of one parent

with the opportunity for the personal attention of the other could not be more clear in the legislative history."

The Court went on to explain that "[t]he whole structure of survivors' benefits conforms to this articulated purpose". [care of children] 420 U.S. at 650, 95 S.Ct. at 1234. It noted that widows without children obtain no benefits on the basis of their husband's earnings until they reach age 60, in most instances. Mother's Benefits cease when the child is no longer eligible for Child's Benefits or when the mother no longer has the child in her care or custody. Mother's Benefits also cease when the child reaches 18, even though Children's Benefits may continue until age 22. The Court noted that "[t]his distinction also sustains our conclusion that § 402(g) was intended only to provide an opportunity for children to receive the personal attention of one parent, since mother's benefits are linked to children's benefits only so long as it is realistic to think that the children might need the parent at home." 420 U.S. at 650, n. 17, 95 S.Ct. at 1234.

Defendant attempts to distinguish *Wiesenfeld* on some vague ground that it involved a "family unit" which suddenly lost its wage earner, or that the marriage requirement is tied to an obligation of support. This contention ignores that statute in its present form and its legislative history. It is an argument based on a much different statutory provision for Mother's Benefits which Congress adopted in 1939 when it first provided for survivor's benefits, but which is inapposite today. Under the 1939 provisions, Mother's Benefits were provided only for widows who were actually living with the deceased worker at the time of his death. Act of August 10, 1939, 53 Stat. 1362, 1365 (76th Cong., 1st Sess.). But the "living with" requirement has been completely eliminated in the statute and there is no requirement that the deceased worker have ever lived with or supported his wife or children. The legitimate children of the deceased wage earner, Mr. Boles, will receive the benefits of Mother's Insurance Benefits regardless of whether their father was living with them or sup-

porting them at the time of his death, or even if he never lived with or supported them. In contrast, if Mr. Boles had left his wife and returned to live with plaintiffs Gonzales and Boles and died while living with and supporting them, they would still remain ineligible for Mother's Insurance Benefits. In other words, it is the illegitimacy of the child and not any notions of "family unit" which unconstitutionally denies benefits to plaintiffs and the members of plaintiffs' class. *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Glona v. American Guarantee and Liability Insurance Company,* 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968).

■ Another illustration that Mother's Benefits are unrelated to an existing family unit is the statutory changes which now provide such benefits to divorced mothers and their children. At its inception the Mother's Benefit was limited to widows and was even called "Widow's Current Benefits". This title was changed to Mother's Benefits in the 1950 amendment which gave Mother's Benefits to surviving divorced wives and their children. Act of Aug. 28, 1950, 64 Stat. 482, 485. This change alone dispels the defendant's argument that survivor's benefits are currently intended to protect against the vulnerability of the family unit, because we are now granting benefits to homes which had already been broken up as a family unit by divorce.

The current statutory scheme also contradicts defendant's emphasis on legally enforceable support obligations. For example, defendant argues that a divorced woman has a means by which she can compel support for herself and her children from her former husband. On the contrary, divorced mothers and their children are eligible for Mother's Benefits even if no legal obligation to support existed at the time of the wage earner's death, or at any time after the divorce. Prior to 1965, if the mother divorced the father and remarried, she lost eligibility for Mother's Benefits for all time due to her remarriage. But since the 1965 amendment, if the mother's second

marriage is terminated by divorce or death of her second husband, she may be eligible for Mother's Benefits on the account of her first husband (assuming all other requirements are met) because she "is not married" after termination of her second marriage. This is so even though any support obligation of her first husband most probably terminated at the time of her remarriage. All this demonstrates that Mother's Benefits are not related to an obligation to support the mother but rather stem from the statutory purpose to assist the children.

■ The provisions for Mother's Benefits to surviving divorced wives also illustrates in another way that the statute currently has no relationship to support requirements. In an earlier form, a surviving widow was entitled to benefits only if she were receiving at least half of her support from the former husband at the time of his death. Act of Aug. 10, 1950, 64 Stat. 482, 485. That requirement no longer applies. P.L. 89–97, § 307(c)(3–5); 79 Stat. 286, 378 (1965). Now the divorced wife is eligible for Mother's Benefits even if she has never received any support from the father either for herself or for her children, even if the father was excused from any support obligations in the divorce proceedings. Thus such women and their children are eligible for Mother's Benefits even though no legal obligation to support the ex-wife exists at the time of the death of the father.

Where the statute discriminates against illegitimate children, an analysis must be made of the purposes of the statutory scheme and the purposes for the disparate treatment. As the Supreme Court demonstrated in both *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974) and *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), such an analysis looks to the reality of the statutory scheme and does not accept glib statements of its purpose by its defenders. Such an analysis herein demonstrates that the only reason plaintiffs have been denied Mother's Insurance Benefits is the illegitimacy of plaintiff Boles resulting from the failure of his mother and father to marry. It is the classic case of visiting the sins of the parents on the child. As the Supreme Court pointed out in its most recent decision on point, "the parents have the ability to conform their conduct to societal norms, but their illegitimate children can affect neither their parents' conduct nor their own status." *Trimble v. Gordon,* 430 U.S. at 770, 97 S.Ct. at 1465.

## IV. Discrimination in the Social Security Act Against Illegitimate Children in Providing Mother's Insurance Benefits Violates the Fifth Amendment

■ The Supreme Court has made it clear that it is unconstitutional to deny illegitimate children benefits enjoyed by legitimate children solely because of the status of their birth. In *Weber v. Aetna Casualty and Surety Company,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972), the Court found it unconstitutional to deny the same right of recovery of workmen's compensation benefits to illegitimate children of deceased workers as was enjoyed by legitimate children of deceased workers. Relying on its prior decision in *Levy v. Louisiana,* 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), involving recovery under a wrongful death statute, the Court concluded:

> "The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing difficulties on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent. Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where—as in this case—the classifi-

cation is justified by no legitimate state interest, compelling or otherwise."

*Weber v. Aetna Casualty and Surety Co.,* 406 U.S. at 175–76, 92 S.Ct. at 1406–1407.

In subsequent social welfare cases the Court has relied on this principle to reject disparate treatment of illegitimate children. In *Gomez v. Perez,* 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), the Court held that:

> ". . . a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally. We therefore hold that once a State posits a judicially enforceable right on behalf of children to needed support from their natural fathers there is no constitutionally sufficient justification for denying such an essential right to a child simply because its natural father has not married its mother."

*Id.,* 409 U.S. at 538, 93 S.Ct. at 875. Again in *Jimenez v. Weinberger,* 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), the Court found unconstitutional a provision of the Social Security Act regarding Children's Benefits which discriminated against illegitimate children born after the onset of the wage earner's disability. It reiterated its position that discrimination based on status of birth was unconstitutional. *Id.,* 417 U.S. at 632, 94 S.Ct. 2496. *Accord: Beaty v. Weinberger,* 478 F.2d 300 (5th Cir. 1973) *aff'd summarily,* 418 U.S. 901, 94 S.Ct. 3190, 41 L.Ed.2d 1150 (1974).

The Supreme Court has also summarily affirmed two lower court decisions invalidating a provision of the Social Security Act under which certain classes of illegitimate children could receive Children's Benefits only if other survivors of the deceased did not exhaust the Act's maximum family allowance. *Davis v. Richardson,* 342 F.Supp. 588 (D.Conn.), *aff'd,* 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972); *Griffin v. Richardson,* 346 F.Supp. 1226 (D.Md.), *aff'd* 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1972).

In *New Jersey Welfare Rights Organization v. Cahill,* 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973), the Court struck down a provision of New Jersey's program of "Assistance to Families of the Working Poor." The plaintiffs challenged an aspect of the program which limited benefits to families with two ceremonially married adults and at least one minor child of both. The Court, quoting *Weber* and relying as well on *Levy* and *Gomez,* sustained the constitutional objection, concluding that:

> ". . . appellants' claim of the denial of equal protection must be sustained, for there can be no doubt that the benefits extended under the challenged program are as indispensable to the health and well-being of illegitimate children as to those who are legitimate."

*Id.,* 411 U.S. at 621, 93 S.Ct. at 1701.

In its most recent case in point, involving intestate inheritance, the Supreme Court held that "the statutory discrimination against illegitimate children is unconstitutional . . . ." *Trimble v. Gordon,* 430 U.S. 762, 766, 97 S.Ct. 1459, 1463, 52 L.Ed.2d 31 (1977). The case in effect overruled *Labine v. Vincent,* 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1974), which itself was one of only two cases decided since 1968 upholding unequal treatment of illegitimates. See 430 U.S. at 776, n. 17, 97 S.Ct. 1459. In *Trimble* the Court noted that Labine is "difficult to place in the pattern of this Court's equal protection decisions, and subsequent cases have limited its force as a precedent." 430 U.S. at 767–68, n. 12, 97 S.Ct. at 1464.

*Trimble* has also rendered moot the only other case since 1968 upholding disparate treatment of illegitimates. That case, *Mathews v. Lucas,* 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976), involved Children's Insurance Benefits under the Social Security Act. In one part the Act requires a child to be dependent upon his insured parent to qualify for the benefits, 42 U.S.C. § 402(d)(1)(C), but then concludes that an extensive list of categories of children are presumptively dependent, including all legitimate children and many classes of illegitimate offspring. As the Court notes, ". . . a child who would be entitled to inherit personal property from the insured

parent's estate under the applicable statute intestacy law, is considered to have been dependent at the time of the parent's death." *Id.*, 427 U.S. at 499, 96 S.Ct. at 2759. *See also Jimenez v. Weinberger*, 417 U.S. 628, 631 n. 2, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974). Since *Trimble* requires that all illegitimate children may now inherit upon intestacy (with the possible exception of residents of Louisiana), *Lucas* is effectively moot and no illegitimates will have to prove dependency in order to qualify for Children's Benefits. The discrimination against illegitimate children and their mother in the provision of Mother's Insurance Benefits is thus apparently the sole remaining vestige of a variety of discriminatory provisions against illegitimates in the Social Security Act which have fallen under the recent decisions of the United States Supreme Court.

In any event *Lucas* does not apply to the case at bar which involves an exclusion of all illegitimates without any opportunity to prove dependency and the inclusion of all legitimates without regard to dependency. In this regard, *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974) and *Beaty v. Weinberger*, 478 F.2d 300 (5th Cir. 1973), *summarily aff'd*, 418 U.S. 901, 94 S.Ct. 3190, 41 L.Ed.2d 1150 (1974), are more nearly controlling. Both cases involved the situation of children of a disabled insured worker born after the onset of the disability. After-born legitimate children and some classes of after-born illegitimate children receive Children's Insurance Benefits, but other after-born illegitimate were barred from benefits, regardless of whether they were living with or were dependent on the insured. The Court found that the statute was both overinclusive by granting benefits to children not dependent on the insured and underinclusive by denying benefits to children who were actually dependent on the insured. It concluded, in *Jimenez*, at 417 U.S. at 637, 94 S.Ct. at 2502.

". . . hence to conclusively deny one subclass benefits presumptively available to the other denies the former equal protection of the laws guaranteed by the due process provision of the Fifth Amendment."

The case at bar is even a stronger example of an unconstitutional statute because it encompasses a total exclusion of all illegitimates from Mother's Insurance Benefits and a total inclusion of all legitimate children, regardless of dependency. In both *Jimenez* and *Beaty*, the discrimination was actually between classes of illegitimates on one hand and a class made up of both legitimates and illegitimates on the other. Nevertheless the Court struck down the absolute bar to benefits.

In contrast, *Mathews v. Lucas*, 427 U.S. 495, 97 S.Ct. 2755, 49 L.Ed.2d 651 (1976), involved only overinclusion, not underinclusion. Unlike here, the disfavored class in *Lucas* had the opportunity to qualify for benefits by proving dependency. Indeed, defendant's scant reference to the *Lucas* case in his memorandum indicates recognition of its inapplicability.

Instead, defendant relies on two Social Security cases which do not involve discrimination against illegitimate children at all. *Califano v. Jobst*, 434 U.S. 47, 98 S.Ct. 95, 54 L.Ed.2d 228 (1977); *Mathews v. deCastro*, 429 U.S. 181, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976). The Court recognizes that in cases such as these the rule of *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), applies so that the statute may draw distinctions in granting social welfare benefits so long as they have a rational basis, even though the classification is not mathematically precise or results in some inequality. *Mathews v. deCastro*, 429 U.S. at 185, 97 S.Ct. 431. But the cases also acknowledge that distinctions based on sex and illegitimacy aren't treated in quite the same fashion.

■ Although the strict scrutiny applicable to race discrimination is not applicable to illegitimates, *Mathews v. Lucas*, 427 U.S. 495, 506, 97 S.Ct. 2755, 49 L.Ed.2d 651 (1976), the Supreme Court has indicated that the courts must look more closely to analyze the statutory purpose and the rationality of the means sought to achieve it when discrimination against illegitimates

results. In *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), the Court noted that although the strict scrutiny test is not applicable to illegitimacy cases, it recognized that illegitimacy is analogous in many respects to the personal characteristics that have been held to be suspect when used as the basis for statutory differentiation. The Court then concluded:

"Despite the conclusion that classifications based on illegitimacy fall in a 'realm of less than strictest scrutiny,' *Lucas* also establishes that the scrutiny 'is not a toothless one,' . . . a proposition clearly demonstrated by our previous decisions in this area."

*Id.*, 430 U.S. at 767, 97 S.Ct. at 1463.

The approach which the Court took to the Illinois intestacy statute is illustrative of the required constitutional review in cases involving discrimination against illegitimates. A variety of rationales were offered by the state to support its denial of intestate inheritance from the father to his illegitimate children. The Court sifted through the rationales, rejecting some as not expressing the purpose of the Illinois legislature in enacting the statute. As to others, it decided the means used by the state to achieve the purpose were unconstitutionally broad. It noted that the statute did not meet the test that was central to the finding of constitutionality in *Mathews v. Lucas*, 427 U.S. 495, 97 S.Ct. 2755, 49 L.Ed.2d 651 (1976), that the "statute does not broadly discriminate between legitimates and illegitimates without more, but is carefully tuned to alternative considerations." *Trimble v. Gordon*, 430 U.S. at 772, 97 S.Ct. at 1466 (1977).

The Court has followed this pattern of careful evaluation of the statutory purposes in all of its illegitimacy cases in the past ten years. In *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968) and *Glona v. American Guarantee and Liability Insurance Co.*, 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), arguments that denial of wrongful death benefits to illegitimates and their mother would discourage immorality and illegitimacy were examined and found constitutionally insufficient to justify the discrimination. A similar analysis overturned discrimination against illegitimates in workers' compensation benefits against an argument that giving preference to legitimate children strengthens family ties and comports with the norm of closer family relationships between a father and his legitimate children. *Weber v. Aetna Casualty and Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972). In *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973), the Court rejected the "lurking problems of proof of paternity" as justification for denying an illegitimate child the right to receive support from its father. The Court noted that under *Levy* and *Weber* "a State may not invidiously discriminate against illegitimate children by denying them substantial benefits accorded children generally." *Id.*, 409 U.S. at 538, 93 S.Ct. at 875.

In *New Jersey Welfare Rights Organization v. Cahill*, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973), the Court overturned a state public assistance program limited to families in which the mother and father are married against a claim that the statute was designed to preserve and strengthen traditional family life. The Court noted that "the benefits extended under the challenged program are as indispensable to the health and well-being of illegitimate children as to those who are legitimate." *Id.*, 411 U.S. at 621, 93 S.Ct. at 1701. In *Jimenez v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974), discrimination against a class of illegitimates in Social Security benefits was held unconstitutional despite a strong argument that the differential treatment was necessary to prevent spurious claims of paternity. In contrast to the decisions in cases not involving illegitimates or sex, Chief Justice Burger's opinion for the Court closely examines the problem of spurious claims and finds they could be met without a blanket exclusion of a class of illegitimate children.

Thus none of these discredited rationales can be used to uphold the discriminatory treatment accorded illegitimates in this

case. The Court, moreover, has already examined and discredited the government's arguments that this discrimination is justifiable because of considerations of the "family unit" or because legal support obligations are involved.

The suggestion of defendant that the case does not involve discrimination against illegitimates since benefits were denied plaintiff because his mother failed to qualify because she was never married to his father is sheer sophistry. Lack of marriage between the mother and father of a child is the very definition of illegitimacy. Defendant's argument was rejected by the Supreme Court in *New Jersey Welfare Rights Organization v. Cahill*, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973) which held unconstitutional a New Jersey statute granting public assistance for families "which consist of a household composed of two adults of the opposite sex ceremonially married to each other who have at least one minor child . . . ." 411 U.S. at 619, 93 S.Ct. at 1700. The Supreme Court took little space to brand this "neutral" language as nothing more than invidious discrimination against illegitimates. As the Court there recognized, ". . . although the challenged classification turns upon the marital status of the parents as well as upon the parent-child relationship, in practical effect it operates almost invariably to deny benefits to illegitimate children while granting benefits to those children who are legitimate." 411 U.S. at 619, 93 S.Ct. at 1700.

Under the defendant's argument, all Illinois has to do is to amend its statute to provide that intestate inheritance from the father is granted only to a child "whose mother was married to his father" and the result in *Trimble* would be overturned. Illegitimate children would not inherit, but defendant would describe the result as constitutional because the statute was now facially neutral.

Defendant has also attempted to play on the sympathy of the Court by suggesting that any increase in benefits to plaintiffs may entail a reduction in benefits to the deceased's legitimate children, due to the maximum of benefits payable on the account of one insured. Why this Court should favor the legitimate child over the illegitimate child is not explained. In any event, *Weber v. Aetna Casualty and Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Davis v. Richardson*, 342 F.Supp. 588 (D.Conn.), *aff'd*, 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972); and *Griffin v. Richardson*, 346 F.Supp. 1226 (D.Md.), *aff'd*, 409 U.S. 1069, 93 S.Ct. 689, 34 L.Ed.2d 660 (1972), expressly reject such contention on the part of defendant.

The reality of the history of the Social Security Act is that the Act discriminated against illegitimate children because of the stigma of their birth, the very kind of legislation the Supreme Court has consistently condemned since 1968. Until 1965, twenty-six years after Children's Benefits were first instituted, the Social Security Act gave no benefits to illegitimate children. *See Davis v. Richardson*, 342 F.Supp. 588, 591 (D.Conn.), *summarily aff'd*, 409 U.S. 1069, 93 S.Ct. 678, 34 L.Ed.2d 659 (1972). Then Congress included illegitimate children but hedged their benefits with a series of discriminatory provisions, almost all of which have been struck down by the Supreme Court. The last vestige of this discrimination now appears to be before this Court, and the Court is of the opinion that it should suffer the same fate. Illegitimate children have an equal need and an equal right with legitimate children for the opportunity to have their mothers stay home to care for them when they are young.

It is accordingly

ORDERED that Defendant's motion for summary judgment is DENIED;

ORDERED that Plaintiff's motion for summary judgment is GRANTED;

DECLARED that Section 202(g)(1) of the Social Security Act, 42 U.S.C. § 402(g)(1), is unconstitutional and void insofar as it prevents Plaintiffs and the Plaintiff Class from receiving Mother's Insurance Benefits solely on the ground that Plaintiff mothers were never married to the fathers of their children;

ORDERED that the Defendant is permanently enjoined from denying benefits to Plaintiffs and the Plaintiff Class on the basis of the marriage requirement declared unconstitutional herein;

ORDERED that the Defendant make payment of Mother's Insurance Benefits to the named Plaintiffs retroactive to January 15, 1973; and

ORDERED that the Defendant notify all illegitimate children receiving Child's Insurance Benefits and their mothers that they are no longer ineligible for Mother's Insurance Benefits solely by reason of the marriage requirement declared invalid herein and that they may apply for such benefits.

## APPENDIX

### Statutory Scheme

Section 202(g) of the Social Security Act, 42 U.S.C. § 402(g) provides in part:

"(g)(1) The widow and every surviving divorced mother (as defined in section 216(d)) of an individual who died a fully or currently insured individual, if such widow or surviving divorced mother—

(A) is not married,

(B) is not entitled to a widow's insurance benefits,

(C) is not entitled to old-age insurance benefits, or is entitled to old-age insurance benefits each of which is less than three-fourths of the primary insurance amount of such individual,

(D) has filed application for mother's insurance benefits, or was entitled to wife's insurance benefits on the basis of the wages and self-employment income of such individual for the month preceding the month in which he died,

(E) at the time of filing such application has in her care a child of such individual entitled to a child's insurance benefit, and

(F) in the case of a surviving divorced mother—

(i) the child referred to in subparagraph (E) is her son, daughter, or legally adopted child, and

(ii) the benefits referred to in such subparagraph are payable on the basis of such individual's wages and self-employment income,

shall (subject to subsection (s)) be entitled to a mother's insurance benefit for each month, beginning with the first month after August 1950 in which she becomes so entitled to such insurance benefits and ending with the month preceding the first month in which any of the following occurs: no child of such deceased individual is entitled to a child's insurance benefit, such widow or surviving divorced mother becomes entitled to an old-age insurance benefit equal to or exceeding three-fourths of the primary insurance amount of such deceased individual, she becomes entitled to a widower's insurance benefit, she remarries, or she dies. Entitlement to such benefits shall also end, in the case of a surviving divorced mother, with the month immediately preceding the first month in which no son, daughter, or legally adopted child of such surviving divorced mother is entitled to a child's insurance benefit on the basis of the wages in self-employment income of such deceased individual.

(2) Such mother's insurance benefits for each month shall be equal to three-fourths of the primary insurance amount of such deceased individual."

\*     \*     \*     \*     \*     \*

Section 216(c) of the Act, 42 U.S.C. § 416(c) provides in part:

"(c) The term 'widow' \* \* \* means the surviving wife of an individual \* \*.

Section 216(h)(1)(A) of the Act, 42 U.S.C. section 416(h)(1)(A) provides in part:

"(h)(1)(A) An applicant is the \* \* \* widow \* \* \* of a fully or currently insured individual for purposes of this subchapter \* \* \* if such insured individual is dead, the courts of the State in which he was domiciled at the time of death \* \* \* would find that such applicant and such insured individual were validly married \* \* \* at the time he died. If such courts would not find that such applicant and such insured individu-

al were validly married at such time, such applicant shall, nevertheless, be deemed to be the * * * widow * * * of such insured individual if such applicant would, under the laws applied by such courts in determining the devolution of intestate personal property, have the same status with respect to the taking of such property as a * * * widow * * of such insured individual."