NEW JERSEY WELFARE RIGHTS ORGANIZA-
TION ET AL. *v.* CAHILL, GOVERNOR OF
NEW JERSEY, ET AL.

No. 72–6258. Decided May 7, 1973

PER CURIAM.

This case presents the question of the constitutionality under the Equal Protection Clause of the Fourteenth Amendment of the New Jersey "Assistance to Families of the Working Poor" program, N. J. Stat. Ann. § 44:13–1 *et seq.,* that allegedly discriminates against illegitimate children in the provision of financial assistance and other services. Specifically, appellants challenge that aspect of the program that limits benefits to only those otherwise qualified families "which consist of a household composed of two adults of the opposite sex ceremonially married to each other who have at least one minor child . . . of both, the natural child of one and adopted by the other, or a child adopted by both . . . ." N. J. Stat. Ann. § 44:13–3 (a). Appellants do not challenge the statute's "household" requirement. Rather, they argue that although the challenged classification turns upon the marital status of the parents as well as upon the parent-child relationship, in practical effect it operates almost invariably to deny benefits to illegitimate children while granting benefits to those children who

are legitimate. Although apparently conceding the correctness of this position, the United States District Court for the District of New Jersey, sitting as a three-judge court,* upheld the statutory scheme on the ground that it was designed "to preserve and strengthen family life." 349 F. Supp. 491, 496 (1972).

Confronted with similar arguments in the past, we have specifically declared that:

> "The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent." *Weber* v. *Aetna Casualty & Surety Co.,* 406 U. S. 164, 175 (1972).

Thus, in *Weber* we held that under the Equal Protection Clause a State may not exclude illegitimate children from sharing equally with other children in the recovery of workmen's compensation benefits for the death of their parent. Similarly, in *Levy* v. *Louisiana,* 391 U. S. 68 (1968), we held that a State may not create a right

---

*In prior proceedings in this case, a single judge of the United States District Court for the District of New Jersey, in an unreported opinion, denied appellants' petition to convene a three-judge court on the ground that no substantial constitutional question was presented, and dismissed the complaint. On appeal, the United States Court of Appeals for the Third Circuit held that a substantial constitutional claim had been presented and therefore remanded the case with directions to convene a three-judge court. 448 F. 2d 1247, 1248 (1971).

of action in favor of children for the wrongful death of a parent and exclude illegitimate children from the benefit of such a right. And only this Term, in *Gomez* v. *Perez,* 409 U. S. 535 (1973), we held that once a State posits a judicially enforceable right on behalf of children to needed support from their natural father, there is no constitutionally sufficient justification for denying such an essential right to illegitimate children. See also *Davis* v. *Richardson,* 342 F. Supp. 588 (Conn.), aff'd, 409 U. S. 1069 (1972); *Griffin* v. *Richardson,* 346 F. Supp. 1226 (Md.), aff'd, 409 U. S. 1069 (1972).

Those decisions compel the conclusion that appellants' claim of the denial of equal protection must be sustained, for there can be no doubt that the benefits extended under the challenged program are as indispensable to the health and well-being of illegitimate children as to those who are legitimate. Accordingly, we grant the motion for leave to proceed *in forma pauperis,* reverse the judgment of the District Court, and remand for further proceedings consistent with this opinion.

THE CHIEF JUSTICE concurs in the result.

MR. JUSTICE REHNQUIST, dissenting.

The New Jersey Legislature has enacted a statute entitled "Assistance to Families of the Working Poor," which is designed to provide grants to supplement the income of a discrete class of families with children when independent sources of income are inadequate to support the family unit. The program is completely financed by the State, and therefore need not conform to any of the strictures of the Social Security Act. The New Jersey program for assistance to the working poor does not provide financial grants to classes of children as such, as is the case under various federal plans. Instead, it provides grants to classes of *families as units.* The Court

holds that because benefits are limited to families "which consist of a household composed of two adults of the opposite sex ceremonially married to each other who have at least one minor child . . . of both, the natural child of one and adopted by the other, or a child adopted by both," the legislative scheme violates the Equal Protection Clause of the Fourteenth Amendment.

The Court relies on *Weber* v. *Aetna Casualty & Surety Co.,* 406 U. S. 164 (1972), where a Louisiana statute that denied workmen's compensation benefits to an illegitimate child was invalidated. But the very language that the Court quotes from *Weber* shows how different this case is from that. There a disability was visited solely on an illegitimate child. Here the statute distinguishes among types of families. While the classification adopted by the New Jersey Legislature undoubtedly results in denying benefits to "families" consisting of a mother and father not ceremonially married who are living with natural children, whatever denial of benefits the classification makes is imposed equally on the parents as well as the children.

Here the New Jersey Legislature has determined that special financial assistance should be given to family units that meet the statutory definition of "working poor." It does not seem to me irrational in establishing such a special program to condition the receipt of such grants on the sort of ceremonial marriage that could quite reasonably be found to be an essential ingredient of the family unit that the New Jersey Legislature is trying to protect from dissolution due to the economic vicissitudes of modern life. The Constitution does not require that special financial assistance designed by the legislature to help poor families be extended to "communes" as well.

In the area of economics and social welfare the Equal Protection Clause does not prohibit a State from taking one step at a time in attempting to overcome a social ill, provided only that the classifications made by

the State are rational. Here the classification is based on a particular type of family unit, one of, if not the, core units of our social system. There being a rational basis for the legislative classification, the constitutionality of the law is governed by *Dandridge* v. *Williams,* 397 U. S. 471 (1970), rather than by *Weber.*

I would affirm the judgment of the District Court.