[Civ. No. 35191. First Dist., Div. Three. Apr. 15, 1975.]

RUTH HEFFENER SMOCK et al., Plaintiffs and Respondents, v. ROBERT B. CARLESON, as Director, etc., et al., Defendants and Appellants.

**COUNSEL**

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, and Asher Rubin, Deputy Attorney General, for Defendants and Appellants.

David F. Chavkin, Ralph Santiago Abascal, J. Kendrick Kresse, Victoria J. DeGoff, Sharon J. Golub, Laura Glickman, Robert Valencia, Kathy Sue Krohn and Roy Schoenberg for Plaintiffs and Respondents.

**OPINION**

**BROWN (H. C.), J.**—We are called upon in this case to review an order of the trial court enjoining the Director of the State Department of Social Welfare and the secretary of the Health and Welfare Agency of California "from enforcing EAS [Eligibility and Assistance Standards] section 44-213.4 to the extent that it results in the exclusion of a needy

natural parent, residing with his or her eligible children from the AFDC [Aid to Families with Dependent Children] budget unit for purposes of AFDC grant computation." The court by writ of mandate ordered appellants to return money withheld pursuant to this regulation from October 1, 1971, or the date of the application for assistance.

The challenged regulations (MPP section 44-213.42 and MPP section 44-213.413) provide that an unmarried parent of a child eligible for aid under the state's AFDC program (§§ 11200-11489) may be included in the department's calculation of financial eligibility but shall not be included for purposes of grant computation.* Other relevant factors being the same, this results in a lower grant where the parents of an eligible child are unmarried than where the parents are married.

■    We agree with the trial court that this result is in conflict with section 11250 of the Welfare and Institutions Code. Section 11250 states in relevant part that: "Aid, services, or both, shall be granted under the provisions of this chapter . . . to families with related children under the age of 18 years . . . in need thereof because they have been deprived of parental support or care due to: . . . (c) The unemployment of a parent or parents." The term "unemployed parent" is defined in section 11201 as "a natural parent, adoptive parent, or stepparent with whom the child is living."

It is clear that the family referred to in section 11250 may include unmarried parents and dependent child as well as married parents and

---

*"44-213.4 *Other Needy Related Persons Living in the Home Who May Be Included as 'Nonrecipients' In The Same Family Budget Unit With Eligible Children, Unless EXCLUDED By Section 44-213.5 for Purposes of Determining Financial Eligibility under Chapter 42-300.*

.41    Upon the written request of the parent, or the caretaker if neither parent is living in the home, the following persons living in the home, if needy, shall be members of the Family Budget Unit and shall have their needs and income taken into consideration in determining the financial eligibility of the family.

.411    Unmarried brothers and sisters of the eligible child, including half-or stepbrothers and stepsisters.

.412    The eligible child's stepparent, when the child is deprived by the absence or death of a natural or adoptive parent.

.413    The eligible child's other unmarried parent.

.414    An adult relative, as defined in section 44-213.21, other than the parent's spouse, whose presence is required to provide care and supervision that cannot be given the eligible child by the only parent living in the home due to the parent's incapacity.

.42    Persons included in the Family Budget Unit under provisions of section 44-213.41 for purposes of determination of financial eligibility shall not be included in the Family Budget Unit for purposes of grant computation."

dependent child. The use of the plural in the phrase "parent or parents" and the definition of unemployed parent to include a *"natural parent, adoptive parent, or stepparent with whom the child is living"* (italics added) includes unmarried as well as married parents since no distinction is made upon the basis of the relationship of parents to one another.

To classify the differing living styles involved so that one family receives a lower grant solely because of the marital status of the parents creates a classification which violates the equal protection clause of the Fourteenth Amendment.

The purpose of the AFDC program is to provide aid for children whose dependency is caused by certain circumstances, one of which is the unemployment of their parents. As the court in *Hypolite* v. *Carleson* (1973) 32 Cal.App.3d 979 noted at page 987 [108 Cal.Rptr. 751]: "The reference point in the legislation is the deprived child . . . ." The child is no more deprived because his parents are married; the needs of the child and his family are not affected by the marital status of the parents.

The United States Supreme Court in *New Jersey Welfare Rights Org.* v. *Cahill* (1973) 411 U.S. 619 [36 L.Ed.2d 543, 93 S.Ct. 1700], held unconstitutional an attempt of the State of New Jersey to limit its AFDC program for children dependent because of unemployment to families " 'which consist of a household composed of two adults of the opposite sex ceremonially married to each other.' " (411 U.S. at p. 619 [36 L.Ed.2d at p. 544].) The Supreme Court held that the statute was violative of the equal protection clause, reasoning that "benefits extended under the challenged program are as indispensable to the health and well-being of illegitimate children as to those who are legitimate." (411 U.S. at p. 621 [36 L.Ed.2d at p. 545].) Although children of unmarried parents are not excluded entirely in the case at hand, they are benefited to a lesser extent than are children of married parents. Appellants justify this difference on the ground that the support obligation of married parents is greater than the obligation of unmarried parents because of the requirement that a married person must support his or her spouse. In recognizing that in aiding the child, it is necessary to aid the family, the Legislature has recognized that, as a practical matter, money for necessaries must be spent on the whole and cannot be limited to an individual. An assumption that a family, because of a legal obligation, would spend more money ·on a wife and less on a child than a family where the parents are unmarried, flies in the face of this recognition. It does not

furnish a substantial or reasonable justification for a difference in treatment.

Even if we were to agree with appellants' argument that the acceptable and traditional definition of a family is one composed of married adults and their children, we could not agree that the state may discriminate against the children of unmarried parents in order to foster the favored family concept. This argument was advanced in the dissenting opinion in *New Jersey Welfare Rights Org.* v. *Cahill, supra,* 411 U.S. at pages 621-623 [36 L.Ed.2d at pp. 545-546], and was not persuasive to the majority who reiterated its reasoning in *Weber* v. *Aetna Casualty & Surety Co.* (1972) 406 U.S. 164, 175 [31 L.Ed.2d 768, 779, 92 S.Ct. 1400]: "The status of illegitimacy has expressed through the ages society's condemnation of irresponsible liaisons beyond the bonds of marriage. But visiting this condemnation on the head of an infant is illogical and unjust. Moreover, imposing disabilities on the illegitimate child is contrary to the basic concept of our system that legal burdens should bear some relationship to individual responsibility or wrongdoing. Obviously, no child is responsible for his birth and penalizing the illegitimate child is an ineffectual—as well as an unjust—way of deterring the parent."

The appellants also contend that the trial court erred in ordering the payment of benefits to be retroactive. We have concluded on the basis of *Bd. of Soc. Welfare* v. *County of L. A.* (1945) 27 Cal.2d 81 [162 P.2d 630]; *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730 [97 Cal.Rptr. 385, 488 P.2d 953]; *Mooney* v. *Pickett* (1972) 26 Cal.App.3d 431, 435 [102 Cal.Rptr. 708]; and *Leach* v. *Swoap* (1973) 35 Cal.App.3d 685 [110 Cal.Rptr. 62], that the trial court correctly decided this issue.

Appellants assert that retroactive payments will adversely affect the state's budget and fiscal program and argue that equity requires reversal of the portion of the judgment relating to retroactivity. The record contains no evidence to support the assertion.

The judgment is affirmed.

Good, J.,* concurred.

---

*Retired judge of the superior court, sitting under assignment by the Chairman of the Judicial Council.

**DRAPER, P. J.,**—Under the compulsion of the cited decisions of the Supreme Court of the United States and of California, I concur in the judgment.