**Jean W. OGLESBY, as minor and next friend of Sarah Granger Oglesby, Plaintiff,**

v.

**Everett H. WILLIAMS, Jr., Chief State Registrar of Vital Records of the State of Florida, et al., Defendants.**

**No. 77–837 Civ–T–H.**

United States District Court, M. D. Florida, Tampa Division.

Feb. 20, 1980.

William T. Terry, Tampa, Fla., for plaintiff.

Amelia M. Park, Dist. VI Staff Atty., Dept. of Health & Rehabilitative Services, Tampa, Fla., for defendants.

MEMORANDUM OPINION

HODGES, District Judge.

Plaintiff's complaint seeks a declaratory judgment that Florida Statute 382.16(5)(c) is unconstitutional. She also seeks injunctive relief requiring the Defendant to issue a birth certificate which he has refused to issue in the form requested by the Plaintiff because of the challenged statute. I have concluded that the statute is valid and that

the requested relief should be denied and the case dismissed.

At the pretrial conference it was determined that there are no genuine issues as to any material fact and that the case should be determined by the entry of summary judgment pursuant to Rule 56, F.R.Civ.P. (See the Order entered August 23, 1979). The parties, through their respective counsel, have since filed legal memoranda concerning the issue of constitutional law raised by the Plaintiff's claim, and the case is ready for decision.

The Plaintiff, Jean W. Oglesby, gave birth to Sarah Granger Oglesby on March 23, 1977 in Hillsborough County, Florida. The Plaintiff was not married at the time of conception or birth of her child.

Under the law of Florida (Chapter 382, Florida Statutes, entitled "Vital Statistics"), records of all births and deaths, and related data, are officially collected and maintained by the Department of Health and Rehabilitative Services, and the Secretary of that Department is designated as the State Registrar of Vital Statistics. *See* Florida Statute 382.02.

At the time of the birth of her child Sarah, the Plaintiff requested the Registrar of Vital Statistics to enter the name of the alleged father on the child's birth certificate. No consent to that request, written or otherwise, was submitted to the Registrar by the alleged father, nor was paternity acknowledged or adjudicated.[1] The Defendant refused to name the alleged father on the birth certificate in view of Florida Statute 382.16(5)(c). To place that provision in its proper context, subsection (5) of the statute should be read in its entirety:

(5)(a) If the mother was married at the time of conception, the name of her husband at such time shall be entered on the certificate as the father of the child, and the surname of the child shall be entered on the certificate as that of the husband, unless paternity has been determined otherwise by a court of competent jurisdiction.

(b) If the mother was not married at the time of conception, but is married at the time of birth, the name of her husband at the time of birth shall be entered on the certificate as the name of the father of the child, and the surname of the child shall be entered on the certificate as that of the husband, provided the husband gives consent in writing, unless paternity has been determined otherwise by a court of competent jurisdiction.

(c) If the mother was not married at the time of either conception or birth, the name of the father shall not be entered on the certificate of birth without the written consent of the mother and the person to be named as the father, in which case, upon the request of both parents in writing, the surname of the child shall be that of the father.

(d) In any case in which paternity of a child is determined by a court of competent jurisdiction, the name of the father and surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court.

(e) In all other cases, the surname of the child shall be the legal surname of the mother.

(f) If the father is not named on the certificate of birth, no other information about the father shall be entered on the certificate.

The Plaintiff then instituted this action alleging that Florida Statute 382.16(5)(c) is unconstitutional because it deprives illegitimate children of their right to equal protection of the law as guaranteed by the Fourteenth Amendment. Specifically, Plaintiff claims that the statute establishes different treatment for legitimate and illegitimate children, and that the statutory differentia-

---

1. The Defendant suggests in his brief that the issue of paternity remains as an unresolved factual issue. However, for purposes of summary judgment disposition of this action under Rule 56, F.R.Civ.P., the issue is not a "material" one. As the Plaintiff responds in her brief, she asserts in this action the right to have the alleged father's name recorded on the child's birth certificate without adjudication or acknowledgment of paternity, and based solely upon her allegation as to his identity.

tion is not justified by any permissible state interests.

The Supreme Court of the United States has decided equal protection claims made in behalf of illegitimate children on more than a dozen occasions within the last dozen years. All of those decisions are not easily reconciled. Compare *Labine v. Vincent*, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288 (1971), with *Trimble v. Gordon*, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); and *New Jersey Welfare Rights Organization v. Cahill*, 411 U.S. 619, 93 S.Ct. 1700, 36 L.Ed.2d 543 (1973), with *Mathews v. Lucas*, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). Certain basic and consistent principles have been established, however, and the Court's latest decision in the field, *Lalli v. Lalli*, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978), clearly guides the way to a resolution of the claim made in this case.

■ It seems to be established, for example, that legislative classifications based on illegitimacy are not subject to strict judicial scrutiny in search of a compelling state interest (as are "suspect" classifications such as those based on race or national origin). Rather, such classifications should be condemned only when they fail to meet a somewhat relaxed standard of review, i. e., ". . . if they are not substantially related to permissible state interests." *Lalli v. Lalli, supra,* 99 S.Ct. at 523. The questions are: "What legitimate [governmental] interest does the classification promote? What fundamental personal rights might the classification endanger?" *Mathews v. Lucas, supra,* 427 U.S. at 504, 96 S.Ct. at 2761. See also *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 173, 92 S.Ct. 1400, 1405, 31 L.Ed.2d 768 (1972). Applying these tests the Court has struck down statutory distinctions adversely affecting dependency claims of illegitimate children in relation to the legal claims of their legitimate siblings when the sole purpose of the distinction, as articulated by the state, has been rooted in

society's desire to promote the family unit and discourage extramarital liaisons. See, e. g., *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); *Gomez v. Perez*, 409 U.S. 535, 93 S.Ct. 872, 35 L.Ed.2d 56 (1973); *Weber v. Aetna Casualty & Surety Co., supra.* An effort to deter the parent by imposing future disabilities upon an unborn child has been easily rejected as illogical and unjust.

■ Where other governmental interests are involved, however, such as a desire to provide for the orderly disposition of a decedent's property as in *Labine v. Vincent* and *Lalli v. Lalli, supra,* classifications based upon illegitimacy have been upheld; and a legislative classification which serves that kind of permissible state interest may be further insulated from constitutional attack if the statutory scheme is sufficiently flexible to accommodate the "possibility of a middle ground between the extremes of complete exclusion and case-by-case determination of paternity." *Trimble v. Gordon, supra,* 430 U.S. at 771, 97 S.Ct. at 1465. See also *Mathews v. Lucas, supra,* 427 U.S. at 513, 96 S.Ct. at 2766,[2] and *Lalli v. Lalli, supra,* 99 S.Ct. at 524.

The first question is: What permissible state interests are served by the statute under review? In this instance the state offers two justifications for its statutory classification. The first is the state's desire to insure the accuracy and reliability of its "vital statistics" relating to births, and the second is said to be the state's desire to shield innocent and unsuspecting men from latent and unsubstantiated claims of paternity. Both are permissible state interests. Birth certificates are widely accepted and relied upon in any context in which date and place of birth, or parentage, is a material concern. Indeed, Rule 803(9) of the Federal Rules of Evidence specifically provides that such records are admissible in evidence as an exception to the hearsay rule. The Florida statutory rule of evidence is to the same effect. Florida Stat-

---

**2.** In *Mathews v. Lucas* this concept was expressed: "Here, by contrast, the statute does not broadly discriminate between legitimates and illegitimates without more, but is carefully tuned to alternative considerations."

ute 90.803(9). The state has not only an interest but a duty to safeguard the integrity of such records. Similarly, in *Lalli*, the Court expressly recognized a legitimate state interest in designing a statutory scheme which ". . . permits a man to defend his reputation against 'unjust accusations in paternity claims,' which was a secondary purpose [of the New York law under attack]." 99 S.Ct. 526.

Accordingly, the second question is: What fundamental personal rights might the classification endanger? Apart from possible social stigma, the Plaintiff does not point to any legal right, claim or status which is adversely affected, conclusively or otherwise, by the normal operation of the statute. Furthermore, insofar as the stigma of illegitimacy is concerned, the statutory scheme as a whole is careful to provide for the preparation of new or substitute birth certificates upon acknowledgement or adjudication of paternity (Florida Statute 382.21(2)), and is equally careful to preserve the confidentiality of the original certificate when that circumstance occurs (Florida Statute 382.22).

A third question is: Does the statute accommodate the possibility of a middle ground between the extremes of complete exclusion and case-by-case determination of paternity? The answer is clearly yes. Illegitimacy at birth is not an absolute obstacle to the listing of the name of the father on the certificate of birth. If the "person to be named as father" consents,[3] his name may be entered according to the terms of the very section assailed. Or, pursuant to the succeeding subsection, if paternity is adjudicated, the name of the father *shall* be entered on the certificate in accordance with the order of the Court; and, of course, Chapter 742, Florida Statutes, entitled "Determination of Paternity," establishes a comprehensive cause of action and procedure for resolving disputed paternity.

While the legislature of Florida might have chosen to follow the course suggested by the Plaintiff, the end effect of which would presumably place the burden of initiating litigation upon the alleged father (assuming he received notice of the issuance of a birth certificate naming him as father of the child), it was not required to do so by the constitution. See *Lalli v. Lalli*, 99 S.Ct. at 528. The procedure it selected passes constitutional muster and that ends the litigation.

The Clerk is directed to enter judgment for the Defendant with costs to be assessed according to law.

IT IS SO ORDERED.

---

**3.** Presumably, this literal wording of the statute was crafted to permit a man to lend his name as father of a child even without biological parentage.