MURRAY CONNELL AND ELIZABETH CONNELL, PLAINTIFFS, v. AMERICAN FUNDING LIMITED, A NEW JERSEY LIMITED PARTNERSHIP, DEFENDANT.

Superior Court of New Jersey
Chancery Division Bergen County

Decided December 22, 1987.

*George J. Cotz* for plaintiffs (*Weber, Muth & Weber,* attorneys).

*Keith O. Evans* for defendant (*Marcus & Evans,* attorneys).

LESEMANN, J.S.C.

 Cross motions for summary judgment in this case raise an unresolved question as to the consequence of a lender's noncompliance with the provisions of the Secondary Mortgage

Loan Act, *N.J.S.A.* 17:11A–34 *et seq.* (hereinafter "the Act").[1] Section 58 of that statute, *N.J.S.A.* 17:11A–58, says that the obligation of a borrower arising out of a secondary mortgage loan "shall be void and unenforceable" unless the loan was executed in full compliance with the act. It has already been held that those words mean just what they say: if a loan is subject to the act, and there was not full compliance with its provisions, the debt incurred by the borrower is void. The noncomplying lender can recover neither the principal he advanced to the borrower nor any interest. *See, e.g., Stubbs v. Security Consumer Discount Co.,* 85 *N.J.* 353 (1981).[2]

This case raises a further question: If the borrower pays off the entire loan and only thereafter learns that the seller violated the act when the loan was made, can the borrower then file suit against the lender and recover all of the money he had repaid on the loan?

The loan here was made on September 8, 1983, when plaintiffs Murray and Elizabeth Connell borrowed $150,000 from defendant American Funding Limited and as security therefore, gave a second mortgage on their home in Ridgewood, New Jersey. At the closing defendant required that plaintiffs pay certain closing costs representing expenses incurred by defendant. They included filing fees of $70, search fees of $131, title insurance premiums of $450 and a messenger service charge of $20. There is no question that the Secondary Mortgage Loan Act prohibits such charges respecting any transaction to which

---

[1]The parties agree that there are no material issues of fact, and thus, disposition by summary judgment is appropriate. *R.* 4:46–1.

[2]While this case was pending disposition, the Secondary Mortgage Loan Act was substantially amended. *See L.*1987, *c.* 230, approved July 31, 1987. One such amendment modified the harsh sanction of *N.J.S.A.* 17:11A–58, to permit a noncomplying lender to recover the principal amount of any loan, although not any interest. *Id.,* § 22.

it applies. *N.J.S.A.* 17:11A-46.[3]

For approximately two years following closing, plaintiffs made the normal monthly payments called for by their loan agreement. They then decided to sell their home and contacted defendant in order to obtain the necessary payoff figure to discharge the second mortgage.

Plaintiffs were given that payoff figure over the phone. They had a question as to the correctness of the amount, but inquiries to defendant brought only further statements reiterating the original figure. Upon the advice of the attorney representing them in connection with the sale of their home (not present counsel) they paid defendant the full amount requested, and obtained the discharge of the second mortgage. Only two months later did their attorney write to defendant requesting a "complete breakdown" and information as to how defendant had computed the payoff figure.

Approximately three weeks after that letter defendant's attorney responded, saying that he had "reviewed the entire loan file" and had concluded that plaintiffs were entitled to a refund of $17,913.68. He added that a check for that amount was being enclosed "in full satisfaction of your inquiry." Although the letter did not set out the reason for the original overcharge, it was subsequently acknowledged that defendant had included a prepayment penalty which was not permitted under the law of this State (*N.J.S.A.* 46:10B-2) and had also calculated accrued interest in an incorrect manner.[4]

---

[3]The amendment noted in n. 2, *supra,* also liberalized this provision of the act to permit the lender to collect certain out of pocket disbursements from the borrower. *L.*1987, *c.* 230, § 14.

[4]Plaintiffs do not argue that the improper imposition of a prepayment penalty or the incorrect computation of interest entitles them to a refund of the amount they paid defendant. The section of the act which declares a noncomplying loan "void and unenforceable" refers only to the making of the loan itself. It does not dictate a finding of voidness or unenforceability because of improper procedures respecting payoff of the loan.

That correspondence apparently induced plaintiffs to contact their present counsel who then, for the first time, focused on the improper charges imposed when the loan closed some years before. On that basis plaintiffs' new attorney wrote to defendant and demanded repayment of all monies that had been paid to defendant—both the monthly installments and the lump-sum payoff amount—less only the $17,913.68 which had already been refunded. Defendant rejected that demand and this litigation followed.

Defendant raises a number of defenses to plaintiffs' claim. Most of them can be disposed of briefly before addressing the dispositive issue, which is the proper interpretation of *N.J.S.A.* 17:11A–58.

■ First, defendant claims that the Secondary Mortgage Loan Act does not apply to this transaction. Rather, it says, *N.J.S.A.* 31:1–1, which is part of the General Usury Law, governs this matter.

*N.J.S.A.* 31:1–1 sets general ceilings for interest rates on loans. It also defines certain exceptions to those ceilings. The specific provision relied on by defendant is *N.J.S.A.* 31:1–1(e) which states that, notwithstanding the general interest rate ceiling set out in the General Usury Law, certain described transactions "may provide for any rate of interest which the parties agree upon." One such class of exempt transaction is described as "loans in the amount of $50,000 or more," except for certain loans secured by first mortgages on described types of real property. Plaintiff says that since the loan here was for more than $50,000, and did not involve one of the described first mortgages (it was a second mortgage), the loan is exempt from the interest limitations of the General Usury Law.

That conclusion seems unassailable. However, defendant uses that conclusion as a basis for a claim that *N.J.S.A.* 31:1–1(e) thus leaves "totally unregulated the charges that a borrower pays" on such a loan in excess of $50,000.

That logic and that conclusion, however, are not supported by the language or the policy of either the General Usury Act or the Secondary Mortgage Loan Act.

The General Usury Act regulates interest rates. And that is all it does. If the provisions of that statute exempt a particular transaction from its provisions, that means only that a higher rate of interest can be charged on that loan. It does not mean that the transaction also—in some unexplained way—becomes exempt from the totally different provisions of the Secondary Mortgage Loan Act. That latter statute regulates much more than interest rates. Among other things it regulates permissible charges *other than* interest rates and there is no reason to conclude that simply because a transaction may be exempt from the General Usury Law, it is also exempt from the provisions of the Secondary Mortgage Loan Act. The one simply does not follow from the other.

■ Defendant also submits arguments of waiver, estoppel and accord and satisfaction, all based on plaintiffs having made full payment of the payoff amount demanded by defendant, and having thereafter received and retained the $17,913.68 repaid by defendant.[5]

The short answer to these arguments is that all those actions occurred while plaintiffs were unaware that the charges defendant had imposed at the 1983 closing were unlawful, or that because of that illegality, the note they had signed in 1983 was "void and unenforceable." Without that knowledge, there is no basis for a claim that plaintiffs waived the rights of which they were unaware, or that they should be estopped from asserting those rights now, or that their acceptance of the refund check

---

[5]During pretrial depositions plaintiffs revealed, apparently to the surprise of both attorneys, that they had never actually cashed the $17,913.68 check sent to them by defendant. Nor had they returned it. They had simply held it, uncashed, until it was, presumably, stale and no longer negotiable. In view of the conclusions embodied in this decision, the question of whether plaintiffs kept, cashed or returned the check is not significant.

represented an accord and satisfaction respecting a claim that they did not know they had.

A waiver is generally defined as an intentional relinquishment of a known right. *West Jersey Title & Guarantee Co. v. Industrial Trust Co.*, 27 *N.J.* 144 (1958); *In Re Bessemer Trust Co.*, 147 *N.J.Super.* 331, 396 (Ch.Div.1976). Here there was neither knowledge of the right in question nor any basis to find an intent to relinquish the same. Thus, the claim of waiver fails on both counts.

An estoppel arises when one party is led to change his or her position in reliance on a course of conduct followed by another. In such a case, the doctrine of estoppel will be applied to bar the second party from altering that conduct if, to do so, would prejudice the first party. *Highway Trailer Co. v. Donna Motor Lines, Inc.*, 46 *N.J.* 442 (1966), *cert.* den. 385 *U.S.* 834, 87 *S.Ct.* 77, 17 *L.Ed.*2d 68 (1966); *Jewish Center of Sussex Cty. v. Whale*, 165 *N.J.Super.* 84 (Ch.Div.1978).

None of those elements is present here. Nothing that plaintiffs did caused defendant to change its position to its detriment. The concept of estoppel is simply inapplicable.

The same is true of accord and satisfaction. Defendant cites authorities standing for the proposition that a creditor who accepts some payment less than the full amount demanded may—in the absence of an appropriate reservation of rights— be found to have accepted the smaller payment as an "accord and satisfaction" by which the creditor surrendered any claim to the larger amount in dispute. Again, the essence of the concept is a knowing and deliberate decision to act in the described manner. *Kissell v. Myer & Bush Co.*, 96 *N.J.L.* 513 (E. & A.1921); *A.G. King Tree Surgeons v. Deeb*, 140 *N.J.Super.* 346 (Cty.D.Ct.1976). Absent any knowledge that a larger amount is or may be owing, there is no basis for finding an accord and satisfaction through acceptance of what is later found to be less than the full amount owed.

Defendant also claims that *N.J.S.A.* 17:11A–46(g), which prohibits imposition of the charges made here, is unconstitutional. The argument is based on the fact that the Secondary Mortgage Loan Act exempts from its provisions "financial institutions such as State and National banks, State and Federal savings and loan associations, savings banks and insurance companies." *N.J.S.A.* 17:11A–61. Since those institutions are permitted to impose the charges which a second mortgage company such as defendant is prohibited from charging, says defendant, the former obtains a competitive advantage. And that unequal treatment, it claims, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

Defendant acknowledges that the Fourteenth Amendment does not prohibit all legislative classification, nor does it prohibit different treatment based on such classification. It requires only that the classification be a reasonable and not arbitrary one. *New Jersey Welfare Rights Org. v. Cahill*, 349 *F.Supp.* 491 (D.N.J.1972), rev'd on other grounds, 411 *U.S.* 619, 93 *S.Ct.* 1700, 36 *L.Ed.*2d 543 (1972); *United States Chamber of Commerce v. State*, 89 *N.J.* 131 (1982). However, defendant ignores the equally basic principle that a legislative classification is presumed valid and constitutional and the party challenging the enactment has the burden of proving the contrary. *Peper v. Princeton Univ. Bd. of Trustees*, 77 *N.J.* 55 (1978); *David v. Vesta Co.*, 45 *N.J.* 301 (1965).

In this case, defendant has fallen far short of establishing that the classification embodied in the exemption referred to is arbitrary, unreasonable or unconstitutional.

Our courts have noted more than once that adoption of the Secondary Mortgage Loan Act was a response to abuses often perpetrated by "fly-by-night" operators preying on unsophisticated borrowers. See, *e.g., Oxford Consumer Discount Co. v. Stefanelli*, 55 *N.J.* 489, 494–495 (1970) (dissent by Weintraub, C.J.); *Westervelt v. Gateway Financial Services*, 190 *N.J.Su-*

*per.* 615 (Ch.Div.1983); *HIMC Investment Co. v. Siciliano,* 103 *N.J.Super.* 27 (Law Div.1968). As the court noted in *HIMC*

The act was promulgated because local and out-of-state lenders were engaging in such transactions by fraud and chicanery. They procured borrowers through the means of false advertising. They then extracted 'unconscionable amounts of interest as well as exhorbitant fees' [103 *N.J.Super.* at 37–38]

And, to the same effect and noting particularly that exhorbitant fees and charges were a frequent area of abuse, see, *Approved Finance Co. v. Schaub,* 137 *N.J.Super.* 325, 331–332 (App.Div. 1975), mod. on other grounds, 73 *N.J.* 193 (1977).

Given that history and the problem it was addressing, it cannot be said as a matter of law, and without first meeting a heavy burden of proof, that the Legislature had no rational basis for distinguishing second mortgage companies from more traditional financial institutions. The latter are extensively regulated by a long-established state agency, as well as by federal agencies. See discussion in *Selengut v. Ferrara,* 203 *N.J.Super.* 249, 254–256 (App.Div.1985), and in *City Consumer Services, Inc. v. Department of Banking,* 134 *N.J.Super.* 588, 596–598 (App.Div.1975), certif. den. 69 *N.J.* 73 (1975). As those cases make clear, there is a marked difference between the nature of the relatively new secondary mortgage company and the more traditional banking and insurance institutions. In view of that difference, there is no reason why the normal presumption of validity should not be given full force and effect in weighing the constitutionality of the legislative decision to treat the two differently, with defendant left to bear the substantial burden of overcoming that presumption. Defendant has not met that burden here, and, accordingly, the claim of unconstitutionality must be rejected.

Thus, we arrive at the central issue in this case—the proper interpretation of *N.J.S.A.* 17:11A–58. When the Legislature said that an obligation which is subject to the provisions of the Secondary Mortgage Loan Act shall be "void and unenforceable" if not executed "in full compliance with the provisions" of the act, did it mean only that the lender could not

enforce payment of the loan? Or did it also mean that if the borrower made payments of principal and/or interest on that loan before he learned that the obligation was "void and unenforceable," the borrower would be entitled to have all such payments refunded to him?

There is no case law squarely on point. However, the decision in *HIMC Investment Co. v. Siciliano, supra,* which arose under a predecessor statute to the 1970 Secondary Mortgage Loan Act, dealt with similar (although not identical) language to that of *N.J.S.A.* 17:11A–58.[6] The court there had no doubt that a suit such as plaintiffs' here could not be maintained and its reasoning, while certainly not controlling, is persuasive.

In *HIMC,* it was the Secondary Mortgage Loan Act of 1965 that was before the court. Section 29 of that statute (*N.J.S.A.* 17:11A–29) was the counterpart of the current *N.J.S.A.* 17:11A–58. It read as follows:

> No obligation arising out of a secondary mortgage loan shall be enforceable in the Courts of this State unless such loan was negotiated and made in full compliance with the provisions of this Act.

That quoted language, said the court, gave a borrower no right to sue and recover payments he had made on a loan which did not comply with the provisions of the 1965 statute:

> The statutory remedy for violation of the provisions of the Act is to render the obligation unenforceable. . . . There is no provision for repayment to the borrower of any payments already made or unlawful fees and commissions charged. Certainly this was a consequence which the legislature might have contemplated, but deliberately failed to require. [103 *N.J.Super.* at 39]

The court drew support for its conclusion by contrasting the limited language in the 1965 Secondary Mortgage Loan Act

---

[6]In two cases where borrowers sought to invalidate loans because of the lenders' noncompliance with the present Secondary Mortgage Loan Act, plaintiffs did not seek return of payments they had made before institution of the suit. *See Stubbs v. Security Consumer Discount Co.,* 85 *N.J.* 353, 355 (1981), and *Westervelt v. Gateway Financial Service,* 190 *N.J.Super.* 615, 619 (Ch.Div. 1983). In neither case did the court indicate why the claim was thus limited. Presumably, the limitations reflect only the conclusions of plaintiffs in those cases as to their rights under *N.J.S.A.* 17:11A–58, and as such represent little by way of persuasive authority here.

with the more sweeping remedy expressed in the language of the Small Loan Law, *N.J.S.A.* 17:10–1 *et seq.* Under the latter statute, not only is a nonconforming loan declared "void," but the statute also says that the borrower is

> entitled to recover from the lender any sums paid or returned to the lender by the borrower on account of or in connection with the loan. [*N.J.S.A.* 17:10–14]

The reasoning in *HIMC* seems sound and, as noted, is persuasive. And while it deals with a predecessor statute to that which applies here, the only difference between the two provisions (aside from insignificant variances in phraseology) is the absence of the word "void" in the earlier enactment. The 1965 act said that a nonconforming obligation shall not be "enforceable." The 1970 Act says that any such obligation shall be "void and unenforceable."

There is no reason to believe that the language change from 1965 to 1970 was intended to effect a substantive change in the rights of a borrower respecting a nonconforming loan transaction. The addition of the word "void" in the 1970 act seems rather to signify an emphasis in the Legislature's declaration that a lender cannot recover on an obligation which does not comply with all provisions of that statute. There is no rational basis on which one could conclude that introduction of the term "void" was intended to create, or had the effect of creating, a right in the borrower which he did not have under the earlier statute.

Certainly, the reasoning in *HIMC* does not turn on any such niceties of language. Rather, it rests on the absence of a provision comparable to that in the Small Loan Law which expressly authorizes a right to relief not stated in either the 1965 or the 1970 Secondary Mortgage Loan Act. And that reasoning is as applicable here, to the 1970 act, as it was in *HIMC* to the 1965 statute.

Nor does an analysis of the policy underlying the Secondary Mortgage Loan Act afford any assistance to plaintiffs.

As noted above, even given the more limited effect argued for by defendant, the remedy set out in *N.J.S.A.* 17:11A–58 is

harsh indeed. For a violation of the act, the lender can lose his entire loan and the borrower can find himself or herself with a huge windfall.

That, of course, is the policy embodied in the act. It is a deterrent, and undoubtedly a strong deterrent against unlawful conduct on the part of the lender.

However, given the harshness of that penalty, it is not apparent that anything more could be accomplished by making the penalty even more severe. If a lender knows that a violation of the act means the borrower will not be required to make any payment of principal or interest, that would certainly represent a powerful deterrent against any such violation. It is difficult to believe there would be *less* of a deterrent if the lender realized that his unlawful conduct would only deprive him of payments which had not yet been made, and if he were fortunate enough to get some payments in hand before the borrower realized he had a right not to pay, he could keep those payments. Thus, to create an additional remedy—a right to recover all payments made to the lender in a nonconforming transaction—would not significantly increase the deterrent effect of *N.J.S.A.* 17:11A–58. Rather, without advancing any legislative policy, it would simply contribute to a windfall for borrowers and would be more likely to contribute to injustice than to justice.

In sum then, we come to this:

The language of *N.J.S.A.* 17:11A–58 clearly states that a lender who does not comply with all provisions of the Secondary Mortgage Loan Act cannot force the borrower to repay any part of that loan. It is "void and unenforceable."

The language of *N.J.S.A.* 17:11A–58 does *not* say that if a borrower makes such payments before becoming aware of his right to refuse to do so, he can recover those payments from the lender. To reach that conclusion, a court would have to imply that additional remedy into the statute.

There is no reason for any such implication. It is not called for by any decision of our courts, nor by the policy underlying

the statute. And the contrast in language between the Secondary Mortgage Loan Act and the Small Loan Act is strong evidence that such a forced reading of *N.J.S.A.* 17:11A–58 would not be consistent with the intent of the Legislature. As pointed out in *H.I.M.C. Investment Co. v. Siciliano, supra,* the language of the latter statute demonstrates that when the Legislature intended that a borrower should have a right to recover any payments made respecting an unlawful loan, it knew precisely how to use clear and unambiguous language to say so. It used no such language in the Secondary Mortgage Loan Act, nor is there any reason why this court should imply any such language into the act. Accordingly, plaintiffs' complaint will be dismissed and an appropriate form of judgment[7] so providing may be submitted.

---

[7]The judgment shall provide that plaintiffs may retain the $17,913.68 paid to them by defendant, either by defendant's cashing or replacing the "stale" check described above. Defendant has indicated it has no objection to such repayment.