DECISION
The plaintiffs each filed their complaints in August, 1999, seeking injunctive and declaratory relief as well as damages. Plaintiffs in three of the cases, 99-CVH-0691 ("the Fischer case"), 99-CVH-0692 ("the Aspen case"), and 99-CVH-0693 ("the MI Homes case") sought a temporary restraining order, which was denied after a hearing on August 13, 1999. Presently before the Court is the plaintiffs' Motion for Preliminary Injunction. For purposes of this motion only, all the cases were consolidated, and a hearing was held on August 23-24, 1999.
 STATEMENT OF FACTS
On March 9, 1999, Defendant Board of Trustees of Union Township (hereafter "Trustees") adopted amended resolution 99-03 which purported to "initiate amendments to the Zoning Resolution" of Union Township. The four amendments contained in the resolution were assigned the following zoning case numbers: 1-99-T, 2-99-T, 3-99-T and 4-99-T. Case number 1-99-T sought to increase the minimum square footage and lot size of single family dwellings. Case number 2-99-T sought to simplify site plan review criteria. Case number 3-99-T sought to eliminate the R-2 zone which permitted single family housing with minimum lot sizes of 10,000 square feet. All R-2 zones would be rezoned R-1, a zone requiring higher square footage, although all existing structures in R-2 zones would become nonconforming uses. Finally, case number 4-99-T sought to eliminate the R-3 zone which permitted multi-family uses. All R-3 zones would be rezoned R-1, a single family detached structure residential zone, although all existing structures in R-3 zones would become nonconforming uses.
On April 12, 1999, Amended Resolution 99-03 was presented to the Union Township Zoning Commission, and the cases and map were transmitted by that entity to the Clermont County Planning Commission. On May 25, 1999, the Planning Commission approved its staff recommendations which consisted of recommendations of approval for 2-99-T and of denial for 3-99-T and 4-99-T and line by line recommendations for 1-99-T.
In a letter to the Zoning Commission dated June 4, 1999, Brian Elliff, the Union Township Director of Planning and Zoning noted that, in reference to case number 1-99-T, "[i]f approved, it is recommended that Section 654.1 under the "R-4" regulations also be amended, to change minimum square footages to 1,400 for single story and 1,700 for two or more stories (this was not included in the proposed resolution due to oversight.)" In its meeting on June 14, 1999, the Zoning Commission approved case numbers 1-99-T, 2-99-T, 3-99-T and 4-99-T. The Commission also moved to change the square footage requirements in the R-4 zone as mentioned in Mr. Elliff's June 4 letter. Finally, the Commission moved that any applicant who held an approved formal plan under the R-3 zone as of June 14, 1999 would be vested under that classification. Any applicant who held an approved concept plan as of June 14, 1999 could apply for formal plan approval and, if approved, would be vested under the R-3 classification. Those recommendations were then adopted by the Trustees on July 13, 1999.
Plaintiffs now seek either judgment on the merits or preliminary injunction on the grounds that the defendants failed to comply with R.C. Chapter 519 and the Union Township Zoning Resolution, that the amendments are unconstitutional and that the defendants should be estopped from enforcing the amendments because the plaintiffs have vested rights in the original zoning.
 ANALYSIS
The purpose of a preliminary injunction is to preserve the status quo pending trial on the merits. Consun Food Industries,Inc. v. Fowkes (1991), 81 Ohio App.3d 63. In determining whether to grant a preliminary injunction, the Court must consider whether: 1) the movant has shown a strong or substantial likelihood of success on the merits; 2) the movant has shown irreparable injury will occur without the injunction; 3) the preliminary injunction could harm third parties; and 4) the public interest would be served by issuing the preliminary injunction.Vanguard Transp. Sys., Inc. v. Edwards Transfer Storage Co.,Gen. Commodities Div. (1996), 109 Ohio App.3d 786, 790. Each element must be established by the movant by clear and convincing evidence. Id. No one element is dispositive however; if there is a strong likelihood of success on the merits, an injunction may be granted even though there is little evidence of irreparable harm and vice versa. Friendship Materials, Inc. v. MichiganBrick, Inc. (6th Cir. 1982), 679 F.2d 100, 105.
 Likelihood of Success
The plaintiffs argue that there is a substantial likelihood of their prevailing on three different grounds: 1) that the defendants did not comply with procedural requirements for adopting the zoning amendments; 2) that the amendments are unconstitutional; and 3) that they have vested rights in the former zoning.
Plaintiffs' constitutionality argument is that "the defendants have failed to offer evidence establishing how the amendments advance the public's health, safety or welfare." The preliminary injunction burden rests squarely on the movant, here the plaintiffs. Vanguard Transp. Sys., Inc. v. Edwards Transfer Storage Co., Gen. Commodities Div. (1996), supra, at 790. Thus, the standard is not whether the defendants have offered any evidence, but whether the plaintiffs have shown by clear and convincing evidence that that they possess a substantial likelihood of succeeding on the merits of this argument.
As the plaintiffs point out, there is a presumption that zoning resolutions are constitutional. Goldberg Cos., Inc. v.Richmond Hts. City Council (1998), 81 Ohio St.3d 207; FranchiseDevelopers, Inc. v. City of Cincinnati (1987), 30 Ohio St.3d 28
(citations omitted.) However, "the zoning authority possessed by townships in the state of Ohio is limited to that which is specifically conferred by the General Assembly." Board of Tp.Trustees of Bainbridge Tp. v. Funtime, Inc. (1990), 55 Ohio St.3d 106
at 108. Thus, townships are strictly limited to the following actions:
 "For the purpose of promoting the public health, safety, and morals, the board of township trustees may in accordance with a comprehensive plan regulate by resolution the location, height, bulk, number of stories, and size of buildings and other structures, . . . percentages of lot areas which may be occupied, set back building lines, sizes of yards, courts, and other open spaces, the density of population, the uses of buildings and other structures . . ., and the uses of land for trade, industry, residence, recreation, or other purposes in the unincorporated territory of such township, and for such purposes may divide all or any part of the unincorporated territory of the township into districts or zones of such number, shape, and area as the board determines."
R.C. § 519.02 (Emphasis added.) In Funtime, Inc., the court held that limiting the hours of operation of an amusement park was not one of the specifically enumerated powers granted to townships, and that townships were limited to regulating types of uses even if the township's purpose was proper. In a case similar to the one sub judice, where the purpose is questioned, the Fifth District held that, while the creation of a "river buffer area" properly regulated the use of land, it was clearly enacted for the purpose of the general welfare, including property values, a purpose not enumerated in the statute. Long v. Board of Tp.Trustees, Liberty Tp. (May 24, 1996), Delaware App. No. 95CA-E-06-037, unreported.
Here, the Court finds that there is evidence that some of the zoning amendments may have been enacted for the purpose of maintaining property values, and therefore, in all likelihood for the purpose of the public welfare which is not one of the enumerated powers of R.C. § 519.02. Brian Elliff, testified that "probably the most important function [raising the minimum square footage] serves is preservation of property values." (Transcript, Aug. 23, 1999, p. 27, 28.) This would include case numbers 1-99-T and 3-99-T, which increase the minimum square footage of certain houses. However, the defendants have offered a reasonable argument that case number 4-99-T, which does away with the R-3 multifamily zone, bears a reasonable relationship to public safety in that there is some evidence that multifamily housing creates increased demands on public safety services. Finally, the plaintiffs apparently take no issue with case number 2-99-T. Accordingly, the Court finds that the plaintiffs have clearly and convincingly shown the likelihood of success on the merits of this argument as to case number 1-99-T and 3-99-T.
The plaintiffs also allege that the zoning resolutions are discriminatory and in violation of the Equal Protection Clause, in that they are likely to have a disparate impact on the elderly, handicapped and lower income families. Under the Equal Protection Clause, the standard of review depends upon the nature of the classification made. Unless the classification is related to "suspect classes" such as those based on race, gender or illegitimacy or a fundamental right is involved, the classification is valid unless it bears no rational relationship to a legitimate government interest. Desenco, Inc. v. Akron
(1999), 84 Ohio St.3d 535, 544; Ritchey Produce Co., Inc. v. OhioDept. of Adm. Serv. (1999), 85 Ohio St.3d 194 (race); Craig v.Boren (1976), 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (gender);New Jersey Welfare Rights Org. v. Cahill (1973), 411 U.S. 619,93 S.Ct. 1700, 36 L.Ed.2d 543 (illegitimacy). None of the classifications mentioned by the plaintiffs are suspect and no fundamental right is at issue; therefore, the test is whether the zoning amendments bear a rational relationship to a legitimate government interest.
The Court already addressed this argument above; maintaining property values is not a legitimate township interest, but the public health, safety and morals are. Accordingly, even if the zoning amendments do discriminate against the handicapped, the elderly and low-income persons, none of which are protected classes, this argument neither enhances nor detracts from the determination already made by the Court that 1-99-T and 3-99-T may not relate to public health, safety and morals, but that 2-99-T and 4-99-T probably do.
As the Court has found that the plaintiffs have established a likelihood of success on the merits of a portion of their claim, it is unnecessary to address the remainder of their claims, namely that the defendants did not comply with procedural requirements for adopting the zoning amendments and they have vested rights in the former zoning. Again, the Court notes that the plaintiffs apparently have no issue with case number 2-99-T. And, although the plaintiffs do attack case number 4-99-T, that resolution was enacted for the purpose of deleting the R-3 multifamily zone. It is the Court's understanding that the only plaintiff building multifamily housing at this time, thus the only plaintiff who may be affected by 4-99-T, is Aspen. However, according to testimony elicited at the hearing on the preliminary injunction, Aspen has a variance enabling it to construct multifamily housing in the R-2 zone. It is also this Court's understanding that Aspen may engage in uses according to the R-3 rules in effect prior to the amendments at issue here, but that they must obtain a zoning certificate. In other words, the plaintiffs have not adequately demonstrated that any of the amendments at issue, including 4-99-T, will have any effect whatsoever on Aspen, and therefore preliminary injunction for Aspen is inappropriate at this time as is preliminary injunction on case number 4-99-T as the plaintiffs have not established the likelihood of succeeding on the merits of any of their arguments regarding this resolution.
 Irreparable Harm
The plaintiffs argue that they do not have an adequate remedy at law, and thus will be irreparably harmed if an injunction is not issued, because they have no way of calculating the dollar value of the damages they would suffer and because their reputation is at stake. The plaintiffs further argue that the case of Pidgeon v. Ramar (1991), 62 Ohio Misc.2d 223, holds that declaratory relief is an adequate remedy at law only when procedural improprieties are alleged. In fact, Pidgeon holds that declaratory judgment is an adequate remedy where procedural improprieties are alleged, but there is no limiting language in that opinion. Courts have entertained declaratory judgment actions on constitutional allegations like the ones here. RumpkeRd. Dev. Corp. v. Union Twp. Bd. of Trustees (1996), 115 Ohio App.3d 17;Community Concerned Citizens, Inc. v. Union Twp. Bd. ofZoning Appeals (1993), 66 Ohio St.3d 452; Columbia Oldsmobile,Inc. v. City of Montgomery (1990), 56 Ohio St.3d 60; Union Oil Co.of California v. City of Worthington (1980), 62 Ohio St.2d 263.
It is the premise behind the equitable remedy of preliminary injunction that is important here. That is, can the plaintiffs be made whole by a remedy at law or does equity require an extraordinary remedy? Because the plaintiffs have requested declaratory judgment, the Court will at some point determine the constitutionality of the zoning amendments. The question is whether a determination that the amendments are unconstitutional, coupled with monetary damages, will make the plaintiffs whole. Matters concerning reputation can constitute irreparable harm for which there is no adequate remedy at law. Robert W. Clark, M.D.,Inc. v. Mt. Carmel Health (1997), 124 Ohio App.3d 308.
The plaintiffs have essentially been unable to market or sell their smaller square footage homes since August 13, 1999. Even if the Court does declare the zoning amendments unconstitutional, the plaintiffs will have been damaged in this manner for almost two months. Whether or not the plaintiffs can accurately assess the damage done to them in terms of lost sales or lost volume, there is certainly no way they can put a price on the damage that will be done to their reputation. The plaintiffs have marketed certain floor plans for which they will not be able to follow through on sales. Furthermore, there was testimony that approximately six potential buyers declined to buy MI Homes because of price; this constitutes actual evidence that an increase in price will result in an increase in loss of buyers. Drees has two outstanding contracts for homes made obsolete by the amendments. For these reasons, the Court finds that the plaintiffs will suffer actual irreparable harm if an injunction is not granted prior to the Court's decision on the declaratory judgment action.
 Harm to Third Parties/Public Interest
The plaintiffs argue that a preliminary injunction will not harm third parties for, if the injunction is imposed, the former zoning regulations will remain in effect, so there will not be a legal void in the zoning resolutions. In turn, the defendants argue that if the injunction is issued, developers could apply for and receive zoning certificates permitting them to construct "hundreds, if not thousands" of additional uses which would be nonconforming under the amendments. However, this argument merely underscores the reasoning behind the strict requirements that must be met before a preliminary injunction may be issued. The thousands of nonconforming uses can occur only if the Court issues a preliminary injunction but then finds the amendments constitutional. Thus, the plaintiffs, who argue that the amendments are unconstitutional must, to obtain their injunction, show by clear and convincing evidence that they are likely to win, otherwise the Court would be faced with too much of a risk of creating future instability in the township's zoning. The Court has already found that the plaintiffs have a substantial likelihood of succeeding in their argument that some of the amendments may be unconstitutional; therefore, it is likely that the Court, in issuing the injunction, will not be creating the nightmare situation the defendants conjure, because it is likely that the plaintiffs will prevail. Accordingly, the Court finds that the injunction will not harm third parties and, in balance, is in the public interest.
For the foregoing reasons, the Court hereby grants the plaintiffs' motion for preliminary injunction as follows: the defendants are enjoined from applying those zoning amendments reflected in case numbers 1-99-T and 3-99-T. The preliminary injunction as to 2-99-T and 4-99-T is denied.
 _____________________________ Judge ROBERT P. RINGLAND